[Civ. No. 11562.   Second Appellate District, Division One.—September 21, 1938.]

CLAXTON M. YOUNG, as Guardian, etc., Respondent, v. JAMES A. GAUTIER, Appellant.

C. A. Pinkham for Appellant.

Frank J. McCarthy for Respondent.

YORK, P. J.—Appellant is the owner and operator of a resort known as ''Pop's Willow Lake'', located in the foot-

hills near Sunland, Los Angeles County. Among the facilities offered by him for the amusement of patrons are provisions for swimming and boating, for which purpose a lake is maintained which is divided into two sections by means of a rope barrier. On July 30, 1935, Francis William Lampshire, a minor, having paid the price of admission demanded by appellant, was admitted to the swimming pool around the hour of 1 o'clock in the afternoon. He remained in the pool all afternoon swimming and diving, and at 4:30 o'clock he dived from one of the two rafts maintained on the surface of the pool into the water which had a depth of 12 feet, and in attempting to push himself upward, he placed his foot on the bottom of the pool, came into contact with a piece of broken glass, thereby sustaining deep lacerations on the instep and on the ball of his left foot.

Said minor, by his guardian *ad litem,* brought this action, alleging that appellant wilfully, negligently and carelessly maintained and operated said swimming pool in a dangerous and unsafe condition, in that said appellant allowed and permitted broken glass and other dangerous instruments to be and remain on a certain portion of the bottom of said swimming pool, and that by reason of such negligence and carelessness, and as a direct and proximate result thereof, said minor was injured to his damage in the sum of $10,000.

The cause was heard by the court, and upon conclusion of respondent's evidence, appellant moved for a judgment of nonsuit, which motion was denied. Thereafter, judgment was rendered in respondent's favor for the sum of $1,000 general damages and the sum of $20.80 to cover medical services rendered to said minor on account of said injuries. Appellant made a motion for new trial upon all of the statutory grounds, but on argument urged only the insufficiency of the evidence to warrant or sustain any judgment in respondent's favor and that the findings lacked evidentiary support, which motion was by the court denied.

Appellant here urges that the evidence as a whole is insufficient to support any judgment in respondent's favor and that the findings of the court are not supported by the evidence; that the court erred in overruling his demurrer to the complaint and in denying his motions for judgment of nonsuit and for new trial. In his closing brief appellant avers that unless this court shall find reason to reverse the

case for some other cause, but two main questions are presented, to wit: "1. Is the doctrine of *res ipsa loquitur* applicable? 2. If the doctrine is not applicable, does the evidence as a whole support a judgment in respondent's favor?"

With respect to the sufficiency of the evidence to support the judgment, appellant maintains that "there is not a scintilla of evidence in the entire record showing or indicating negligence on the part of the defendant Gautier, or on the part of his agents, servants or employees, nor is there any showing in the record from which such negligence can reasonably be inferred. The mere presence of a bottle, piece of glass or other foreign substance upon the bottom of the lake raised no presumption of negligence."

"It is elementary that the maxim *'res ipsa loquitur'* translated means simply 'the thing, or affair, speaks for itself'. The courts of this state have long since adopted the rule as expressed in 1 Shearman & Redfield on Negligence, sixth edition, page 132, viz.: 'Where the thing is shown to be under the management of the defendant or his servants, and the accident is such as in the ordinary course of things does not happen if those who have the management use proper care, it affords reasonable evidence, in the absence of explanation by the defendant, that the accident arose from want of proper care.' (Citing cases.) Of course, to justify the application of this doctrine in any case the circumstances of the accident must be such as, unexplained, afford reasonable evidence of want of care in a respect for which the defendant is liable in the particular action. . . . One who seeks to recover damages for injuries alleged to have been incurred by reason of another's negligence must establish by a preponderance of the evidence that the latter's negligence has occasioned him loss. However, where the facts are such as to give rise to an inference of negligence from the inherent nature and character of the act causing the injury, or, in other words, to give application to the principle of *res ipsa loquitur,* the burden of proceeding is shifted to the defendant and if he would escape an adverse finding he must adduce evidence to meet the plaintiff's *prima facie* case. . . . It is apparent from these latter authorities that it is for the jury, or the court when sitting without a jury, to determine from all the evidence in the case whether the defendant has successfully met and rebutted the *prima facie* case made out

by the plaintiff in an action wherein the mere proof of the happening of the accident and the circumstances surrounding it give rise to an inference of negligence. That the inference of negligence created by the application of the doctrine of *res ipsa loquitur* constitutes evidence which may not be disregarded by the jury, but is to be weighed and considered as against the evidence adduced by the defendant in rebuttal thereof, has been announced in numerous cases." (*Michener* v. *Hutton,* 203 Cal. 604, at 607, 609, 610 [265 Pac. 238, 59 A. L. R. 480].)

The record reveals that beer, wine and soda water were sold on the premises and that soda water bottles were the only bottles permitted to be taken on the beach surrounding the lake. One Marvin E. McCart, who was manager of the resort at the time the accident occurred, in answer to the question "What precautions, if any, were taken by the management to prevent the throwing of any debris or bottles, or foreign matter into the lake?" replied: "We did not permit anyone to leave upon the beach any article or anything— they were not allowed to throw anything they might bring with their lunch, like a can, or a paper plate, or anything of that nature on the beach, and the children were not permitted to throw rocks, and each employee, and any employee, of the lake, regardless of his position was told to interfere with anyone breaking those rules." Other than this testimony no evidence was offered by appellant that the bottom of the lake was ever examined to find out if it were free from glass or other debris which might injure the feet of patrons of the resort who were swimming and diving from the rafts maintained by appellant on the surface of the swimming pool. There was evidence that the average attendance at the resort during the month when the accident occurred was six or seven hundred persons per day; that during the peak of the daily attendance three or four lifeguards were on duty and on Sundays and holidays twice that number, and in addition that appellant employed a plain clothes man, a clean-up crew and a janitor crew; that it was the plain clothes officer's duty to walk around the entire lake and to see that the rules and regulations were carried out.

The case of *Boyce* v. *Union Pacific Ry. Co.,* 8 Utah, 353 [31 Pac. 450, 18 L. R. A. 509], cited by respondent, presents a situation analogous to that now under consideration: A

bather brought action against the proprietor of a lake bathing resort for injuries sustained by him from broken glass on the bottom. of the lake. There was evidence that, although the defendant employed men for the purpose of examining the bottom and removing dangerous substances therefrom, there had been no examination made by them on the day of the accident nor on the day before; and, that every precaution was taken to prevent people from throwing things into the lake where people bathed that might injure the feet of the bathers. It was held in the cited case: "It was the duty of the defendant to use reasonable care to keep the bottom of the lake where people bathed free from everything that might injure the feet of the bathers and the want of such reasonable care is negligence. If the defendant had examined the bottom of the lake the morning of the injury, it, in all probability would not have occurred. The question was fairly submitted to the jury whether the defendant was guilty of negligence and it found that it was; and we think the evidence justifies the verdict."

The lake here in question was divided by means of ropes on barrels into two parts, one for swimming and the other for boating. It was the duty of appellant to use reasonable care to keep free from injurious substances the bottom of the lake where people were allowed to swim and to dive. The circumstances of the accident which are unexplained by appellant raise the inference that appellant failed to exercise reasonable care to keep the swimming pool safe for those using it. Such inference constitutes sufficient evidence of negligence on the part of appellant to sustain the findings and the judgment. In other words, the swimming pool was under the management of appellant or his servants, and the accident was such that in the ordinary course of events would not have occurred had appellant used the proper care. The doctrine of *res ipsa loquitur* is applicable for the reason that an inference of negligence arises from the nature and character of the act which caused the injury.

There was no error on the part of the trial court in overruling appellant's demurrer to the complaint, or in denying his motions for nonsuit and for new trial.

The judgment appealed from is affirmed.

Doran, J., and White, J., concurred.

A petition by respondent to have the cause heard in the Supreme Court, after judgment in the District Court of Appeal, was denied by the Supreme Court on November 17, 1938.